ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

ASHLEY L. BARTON (SBN 335673)
ashley.barton@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
HILTON DOMESTIC OPERATING COMPANY INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GADEER ERAKAT, on behalf of herself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>HILTON DOMESTIC OPERATING COMPANY INC., a Delaware corporation;<br><br>Defendant. | CASE NO. 2:26-cv-01387-DC-CSK<br><br>**DEFENDANT HILTON DOMESTIC OPERATING COMPANY INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**<br><br>Date: November 6, 2026<br>Time: 1:30 p.m.<br>Dept: Courtroom 10, 13th Floor<br>Judge: Hon. Dena Coggins<br><br>Complaint Filed: April 7, 2026 |

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT on November 6, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Dena Coggins, United States District Judge, Eastern District of California, located at Robert T. Matsui United States Courthouse, 501 I Street, Courtroom 10, 13th Floor, Sacramento, CA 95814, Defendant Hilton Domestic Operating Company Inc. ("Hilton Domestic") will, and hereby does, move for an order dismissing the Complaint and each of the claims therein of Plaintiff Gadeer Erakat ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing and under Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. The Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, all pleadings and papers on file in this matter, and such other and further evidence and argument as may be presented at the time of the hearing or otherwise.

Hilton Domestic moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiff fails to allege an actual and concrete injury-in-fact sufficient to confer Article III standing.

Hilton Domestic moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state: (1) a violation of the California Invasion of Privacy Act's wiretapping provision, Cal. Penal Code § 631(a); (2) a violation of the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; (3) a violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (4) claims for intrusion upon seclusion or an invasion of privacy under the California Constitution, Article I § 1; or (5) unjust enrichment. Plaintiff's requests for equitable relief under her UCL, invasion of privacy, and unjust enrichment claims also fail because Plaintiff has an adequate remedy at law. For each and all of these reasons, Hilton Domestic's Motion should be granted.

Pursuant to this Court's standing order, Hilton Domestic submits the following certification regarding meet and confer efforts. On June 30, 2026, Hilton Domestic's counsel (Isabelle Ord and Matt Danaher) met and conferred with Plaintiff's counsel Reuben Nathan through a videoconference call to discuss the arguments underlying the Motion. Counsel discussed each

argument in this Motion, agreeing after discussion that the arguments are legal disputes about which the parties simply disagreed. Thus, the parties have not been able to reach an agreement that would obviate the need for Hilton Domestic to file its Motion.

Dated: July 1, 2026

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
ISABELLE ORD

*Attorneys for Defendant*
HILTON DOMESTIC OPERATING COMPANY INC
.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................1

II. STATEMENT OF FACTS ....................2

III. LEGAL STANDARD....................3

A. ...... Rule 12(b)(1): Standing ....................3

B. ...... Rule 12(b)(6): Failure to State a Claim....................3

IV. PLAINTIFF LACKS ARTICLE III STANDING. ....................3

A. ...... No Collection or Disclosure of Plaintiff's Personal Information. ....................4

B. ...... None of the Allegedly Collected Information is Actionable. ....................5

C. ...... Plaintiff Fails to Allege Her Information Diminished in Value. ....................7

V. PLAINTIFF'S ECPA AND CIPA WIRETAPPING CLAIMS FAIL. ....................8

A. ...... The "Tracking Entities'" Consent Defeats Plaintiff's ECPA Claim. ....................9

B. ...... Plaintiff Fails to Plead Interception of "Contents" of Communications. ....................10

C. ...... Plaintiff Fails to Plead Interception "In Transit." ....................11

D. ...... Plaintiff Waived Any CIPA Aiding and Abetting Claim. ....................12

VI. PLAINTIFF'S INVASION OF PRIVACY CLAIMS FAIL. ....................13

A. ...... Plaintiff's Allegations Preclude a Reasonable Expectation of Privacy. ....................13

B. ...... The Disclosure of Plaintiff's Basic Information is Not Highly Offensive. ....................13

C. ...... Plaintiff Fails to Allege Hilton Domestic Committed an Intentional Invasion of Privacy. ....................15

VII. PLAINTIFF'S FAILURE TO ALLEGE THE INADEQUACY OF A LEGAL REMEDY PRECLUDES HER EQUITABLE RELIEF CLAIMS....................15

VIII. PLAINTIFF LACKS STATUTORY STANDING FOR HER UCL CLAIM. ....................16

IX. PLAINTIFF FAILS TO PLEAD HILTON DOMESTIC UNJUSTLY RETAINED ANY BENEFIT SHE PROVIDED....................17

X. CONCLUSION....................18

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Am. Video Duplicating, Inc. v. City Nat'l Bank*,
2020 WL 6882735 (C.D. Cal. Nov. 20, 2020) .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Beltran v. Drs. Med. Ctr. of Modesto*,
2025 WL 1635467 (E.D. Cal. June 9, 2025) (Coggins, J.) .......... 10, 11

*Browning v. Am. Honda Motor Co., Inc.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) .......... 16

*California Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 17

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 14

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .......... 3

*Dawidzik v. Tesla, Inc.*,
2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) .......... 14

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 17

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 7, 8, 10

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) (Coggins, J.) .......... 6, 11

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 4, 7, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 10

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. 2026)....................15

*Goldstein v. Rumble Inc.*,
2026 WL 1406766 (C.D. Cal. Apr. 24, 2026)....................10

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)....................11

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)....................14

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022)....................7

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022)....................15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)....................13

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021)....................7

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020)....................13

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025)....................4

*Herzman v. Smile Brands Inc.*,
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026)....................7

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026)....................8

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023)....................3

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................10

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)....................6

*King v. Conde Nast Pubs.*,
2012 WL 3186578 (C.D. Cal. Aug. 3, 2012)....................16

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) (Coggins, J.)....................11

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 4

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 12

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 3

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 6

*Magliocca v. United Healthcare Servs., Inc.*,
2026 WL 878694 (E.D. Cal. Mar. 31, 2026) .......... 6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 12

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 3

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 5

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) .......... 4

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 3

*Ng v. US Bank, NA*,
2016 WL 5390296 (N.D. Cal. Sept. 26, 2016) .......... 17

*Nichols v. Peacehealth Networks on Demand LLC*,
2026 WL 607763 (W.D. Wash. Mar. 4, 2026) .......... 9

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) .......... 17

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 1, 5, 6

*Rabin v. Google LLC*,
2023 WL 4053804 (N.D. Cal. June 15, 2023) .......... 17

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) ....................18

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)....................9

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................8

*Schneider v. California Dep't of Corrs.*,
151 F.3d 1194 (9th Cir. 1998) ....................13

*Shah v. Talentbridge, Inc.*,
2026 WL 1507888 (C.D. Cal. May 28, 2026) ....................7

*Shulman v. Group W Productions, Inc.*,
955 P.2d 469 (Cal. 1998) ....................13, 15

*Smith v. Cap. One Fin. Corp.*,
2012 WL 1669347 (N.D. Cal. May 11, 2012) ....................13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................15, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016)....................3, 4

*Svenson v. Google Inc.*,
2016 WL 8943301 (N.D. Cal. Dec. 21, 2016)....................7

*Tash v. Vision Serv. Plan*,
2026 WL 1012680 (E.D. Cal. Apr. 14, 2026)....................6

*Thurner v. Walmart, Inc.*,
2026 WL 629768 (E.D. Cal. Mar. 6, 2026) (Drozd, J.)....................15

*In re USA Today Co., Inc. Internet Tracking Litig.*,
2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ....................4

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)....................12

*Welborn v. IRS*,
218 F. Supp. 3d 64 (D.D.C. 2016)....................7

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) ....................3

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................9, 14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................10

**Statutes**

18 U.S.C. § 2510(8) ....................9, 10

18 U.S.C. § 2510, *et seq.* ....................1

18 U.S.C. § 2511 ....................8

18 U.S.C. § 2511(2)(d) ....................9

Cal. Penal Code § 631(a) ....................1, 8, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ....................3

Fed. R. Civ. P. 12(b)(6) ....................3, 13

https://stories.hilton.com/destination-spotlight/hilton-celebrates-this-june-with-lgbtq-pride-offerings; ....................2

https://stories.hilton.com/destination-spotlight/stay-with-pride-stay-with-hilton-unforgettable-celebrations-await-lgbtq-travelers ....................2

https://stories.hilton.com/search/LGBTQ; ....................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit is an attempt to conjure a claim out of commonplace website analytics technologies on Hilton Domestic's websites, hilton.com and stories.hilton.com (collectively, the "Website"). Plaintiff Gadeer Erakat ("Plaintiff") offers a formulaic class action predicated upon merely visiting three web pages on the Website. Plaintiff did not book a room, enter any personal information—let alone any information at all—and merely alleges that standard analytics scripts observed the web pages' URLs when she visited them. That is not a cognizable injury necessary to confer Article III standing and does not give rise to statutory or common law liability either.

Plaintiff's Complaint should be dismissed for multiple, independent reasons:

*First*, Plaintiff fails to allege a concrete injury-in-fact sufficient to confer Article III standing because she does not allege that any offensive or embarrassing information of her own was actually collected or disclosed, that the allegedly collected information is actionable, or that her information diminished in value. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

*Second*, Plaintiff fails to state a claim under the Federal Wiretap Act ("ECPA") because Hilton Domestic's consent bars the claim. Plaintiff also fails to plead interception of the "contents" of her communications, or that any interception occurred while her communications were "in transit." *See* 18 U.S.C. § 2510, *et seq.*

*Third*, for similar reasons, Plaintiff fails to state a claim under the California Invasion of Privacy Act's ("CIPA") wiretapping provision. *See* Cal. Penal Code § 631(a). Plaintiff has also waived any aiding and abetting theory under CIPA by failing to plead it.

*Fourth*, Plaintiff's intrusion upon seclusion and California Constitution invasion of privacy claims fail because Plaintiff lacks a reasonable expectation of privacy in the information at issue, the alleged conduct is not "highly offensive," and Plaintiff does not adequately allege intentional intrusion.

*Fifth*, Plaintiff's requests for equitable relief under the Unfair Competition Law ("UCL"), California Constitution invasion of privacy, and unjust enrichment are barred because Plaintiff

fails to allege an inadequate remedy at law.

*Sixth*, Plaintiff's UCL claim fails because Plaintiff fails to allege a loss of money or property and therefore lacks statutory standing to bring the claim.

*Seventh*, Plaintiff's unjust enrichment claim fails because it is not a standalone cause of action and Plaintiff fails to identify any benefit conferred on Hilton Domestic or expense Plaintiff incurred.

For each and all of these reasons, the Complaint should be dismissed with prejudice.

## II. STATEMENT OF FACTS

On the Website, users may browse for and book hospitality services and reservations, and learn more about destinations and the Hilton Honors program. *See id.* ¶ 18. Users may also navigate to the Website's subdomain, stories.hilton.com, to view additional content. Like myriad other websites, the Website deploys commonplace website tracking technology. *See, e.g.*, *id.* ¶ 8.

Plaintiff is a California resident who allegedly visited the Website "including but not limited to on March 2, 2026." *Id.* ¶ 14. During her Website visit, Plaintiff alleges that she "navigated" to three pages:

(1) https://stories.hilton.com/search/LGBTQ;

(2) https://stories.hilton.com/destination-spotlight/hilton-celebrates-this-june-with-lgbtq-pride-offerings; and

(3) https://stories.hilton.com/destination-spotlight/stay-with-pride-stay-with-hilton-unforgettable-celebrations-await-lgbtq-travelers.

*Id.* ¶ 2.

According to the Complaint, three third-party pieces of tracking script—Treasure Data, Koddi, and Facebook Pixel—loaded onto Plaintiff's browser. *Id.* Plaintiff alleges that these tools intercepted the contents of her communications "including the page URLs identifying what she was browsing, search terms, page titles and content categories associated with those URLs, and/or the referrer URLs reflecting prior navigation." *Id.* ¶ 3. The Complaint also suggests that the first hyperlink listed above resulted in the collection of "Plaintiff's sexual orientation." *Id.* ¶¶ 39, 55. Plaintiff does not otherwise allege the disclosure of any personal, health, or financial information.

## III. LEGAL STANDARD

### A. Rule 12(b)(1): Standing

A complaint should be dismissed where the court lacks subject matter jurisdiction because the plaintiff lacks Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023). The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## IV. PLAINTIFF LACKS ARTICLE III STANDING.

None of Plaintiff's theories of alleged harm—(i) a privacy interest in her information, (ii) "loss of control over [her] personal information," and (iii) diminishment of the value of her information—is a cognizable injury-in-fact. A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016), *as revised* (May 24, 2016). Rather, "[a] plaintiff establishes an injury in fact when she shows that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.'" *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3,

2025) (quoting *Spokeo*, 578 U.S. at 339). She has not done so here.

**A. No Collection or Disclosure of Plaintiff's Personal Information.**

Plaintiff cannot plead a concrete injury because she fails to allege that she shared any personal information with the Website (or any third party). "To sufficiently allege an injury in fact, a plaintiff must identify the specific personal information [they] disclosed that implicates a protectable privacy interest." *In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (cleaned up) (citing *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025)); *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (finding no standing when plaintiff failed to specify personal information disclosed). "[S]ince this is a class action, at least one of the named plaintiffs must have suffered an injury in fact." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). Plaintiff fails to do so.

While the Complaint spills considerable ink regarding third-party tracking technologies in the abstract, it contains virtually no factual allegations about what personal information ***Plaintiff*** shared with the Website during her alleged visit. Plaintiff does not allege that she entered any sensitive or personal information anywhere on the Website. She merely alleges that she "navigated" to three web pages. Compl. ¶¶ 3, 34, 35-66. She does not allege that she booked a hotel room, or entered any personal, financial, or health information, ***or any information at all***. Plaintiff also misleadingly suggests that the alleged data collection "identif[ied] Plaintiff's sexual orientation." Compl. ¶¶ 39, 55. But Plaintiff does not allege that she inputted or shared her sexual orientation anywhere on the Website. This allegation is nothing more than speculation and a summary conclusion devoid of any factual support. Reading about a subject simply suggests interest—nothing more. The tracking tools the Complaint discusses could not collect information that Plaintiff never disclosed.

For these reasons, the Complaint's conclusory allegations about "exploitation" and "loss of control" over "personal information" and "sensitive personal information" fall flat. *See id.* ¶¶ 89, 99, 105, 110. As there was no alleged collection of personal information, Plaintiff does

not allege the requisite disclosure of personal information. *See, e.g.*, *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023) (dismissing claims for lack of standing because failure to specify personal information precluded determination of whether it "is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest"). Accordingly, Plaintiff failed to sufficiently allege an injury in fact, and her claims are subject to dismissal for lack of standing.

**B. None of the Allegedly Collected Information is Actionable.**

Even if Plaintiff had provided any information to the Website, Plaintiff lacks a legally protectable interest in the information allegedly collected. Plaintiff contends the Website transmitted "the page URLs identifying what she was browsing, search terms, page titles and content categories associated with those URLs, and/or the referrer URLs reflecting prior navigation." Compl. ¶ 3. Numerous courts in this circuit have found such vague allegations insufficient to plead concrete injury.

In *Popa v. Microsoft Corp.*, the Ninth Circuit ruled that a website capturing similar information did not result in the kind of highly offensive interferences or disclosures actionable at common law. *See Popa*, 153 F.4th at 791. The Ninth Circuit made clear that "a court [must] assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system," and Article III standing is not automatically conferred whenever a "privacy statute[]" is violated. *Id.* at 784, 791, 794. In *Popa*, a website allegedly captured data about site visits, "organiz[ing] the information it captures into over 30 different categories," such as "URLs of web pages visited," "device" information, "type of browser," "operating system," "mouse movement" and "screen swipes," "text inputted by the user," and "how far down a webpage a user scrolls." *Id.* at 786. But tracking such user interactions does not result in "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law," including the torts of "intrusion upon seclusion" and "public disclosure of private facts." *Id.* at 791. There was no "embarrassing, invasive, or otherwise private information collected," as required to establish a cognizable injury. *Id.*

Courts under similar circumstances have routinely followed *Popa*. In *Maghoney v. Dotdash*

*Meredith, Inc.*, there was no privacy interest in the plaintiff's "health-related searches typed into the Website" "related to symptoms, contraction, and the treatment of chlamydia" (among other information), or "page navigation history, and metadata associated with his site visit, including his [IP] address and device identifiers." 2026 WL 497402, at *1, 2, 8 (S.D. Cal. Feb. 23, 2026). The court reasoned that "it is unclear how [p]laintiff became aware of the sharing of this information" since he did not "allege anyone directly contacted him related to his searches" or "that his searches were made publicly visible." *Id.* at *5. Similarly, in *Khamooshi v. Politico LLC*, the plaintiffs lacked a privacy interest in their "IP addresses, browser and device data, and 'other identifying information'" and thus lacked a concrete injury. *See* 2025 WL 2822879, at *4 (N.D. Cal. Oct. 2, 2025) (dismissing CIPA and other privacy claims). Other courts have recently followed suit in dismissing similar claims. *See, e.g.*, *Magliocca v. United Healthcare Servs., Inc.*, 2026 WL 878694, at *4 (E.D. Cal. Mar. 31, 2026) ("The information plaintiff alleges was collected by the trackers here -- button clicks, page visits, scrolls, session lengths, URLs, and IP addresses, apparently collected after one visit to the UHC website in July 2025 -- resembles exactly the kind of 'non-sensitive browsing activity on a single website' that courts have repeatedly found insufficient to establish a concrete injury"); *Tash v. Vision Serv. Plan*, 2026 WL 1012680, at *4 (E.D. Cal. Apr. 14, 2026) (no privacy interest in "search parameters" when plaintiff failed to "identif[y] how the information transmitted was 'private'").

The rationale of these cases applies here. As to her alleged searches, Plaintiff does not identify any "embarrassing, invasive, or otherwise private information" collected. *Popa*, 153 F.4th at 791. Plaintiff "does not allege anyone directly contacted [her] related to [her] searches," does not allege "that [her] searches were made publicly visible," and "does not allege that any of [her] searches were directly linked to [her] name or other personally identifiable information." *Maghoney*, 2026 WL 497402, at *5; *accord Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 836 (E.D. Cal. 2025) (Coggins, J.) (finding standing when "[p]laintiffs . . . each allege[d] facts showing they . . . ***submitted personal information***" (emphasis added)). To the extent Plaintiff alleges that searching "LGBTQ" implicates a legitimate privacy interest, "[she] has not shown a protectable privacy interest in [these] generic search terms that may reveal the searcher's interests

but are not linked to Plaintiff's identity." *Shah v. Talentbridge, Inc.*, 2026 WL 1507888, at *3 (C.D. Cal. May 28, 2026) (holding no injury in fact because searches for "felony-friendly jobs" and "jobs no background check" did not concern "private, personally identifying information"); *see also Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (no concrete injury when "the complaint contains no allegations explaining what information [p]laintiff disclosed to [d]efendant when he made this appointment" (emphasis added)).

Plaintiff's dearth of allegations regarding the collection or disclosure of her own information precludes any argument that her alleged harm would be actionable at common law.

**C. Plaintiff Fails to Allege Her Information Diminished in Value.**

Plaintiff's conclusory allegations that the value of her private and personally identifiable information was diminished also fail. To plead injury-in-fact, Plaintiff must adequately allege "both the existence of a market for [her] personal information and an impairment of [her] ability to participate in that market." *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)). That a plaintiff's information may have value for a defendant "cannot serve to establish that plaintiff has personally lost money or property" to support standing. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). "[S]imply because a plaintiff's information 'is valuable in the abstract,' and simply because a company 'might have made money from it,' that does not mean that the plaintiff has 'lost money or property as a result.'" *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 845 (N.D. Cal. 2024). Indeed, "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930 ("When confronted with data privacy claims similar to the ones brought by [p]laintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information.").

Here, the Complaint deals only in summary conclusions. First, Plaintiff posits that "[b]rowsing data identifying the specific content a user views, including browsing URLs of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising

marketplace." Compl. ¶ 90. This claim fails to plausibly allege that any of Plaintiff's ***own*** data allegedly collected has any value. Plaintiff also alleges that "Defendant and the Trackers are designed to and on information and belief did capture the economic benefit of that exchange, in the form of advertising revenue and RTB clearing prices generated by the Trackers' use of users' intercepted URL data, without compensating Plaintiff or Class members." *Id.* ¶ 91. Again, Plaintiff fails to assign any monetary value to her data or, at most, claim anything beyond the fact that Hilton Domestic "might have made money from it." *Doe I v. Google LLC*, 741 F. Supp. 3d at 845.

Thus, Plaintiff fails to plausibly allege that her own information has value, "that [she] personally lost the opportunity to sell [her] information," or "that the value of [her] information was somehow diminished after it was collected by [a third party.]" *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931-32. As Plaintiff has not demonstrated the alleged "conduct resulted in some concrete and particularized harm, [she] ha[s] not articulated a cognizable basis for standing pursuant to Article III." *Id.* at 932. The Court's analysis can and should end here, and the Complaint should be dismissed for lack of standing.

## V. PLAINTIFF'S ECPA AND CIPA WIRETAPPING CLAIMS FAIL.

To plead an ECPA wiretapping violation, a plaintiff must allege that the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026) (citation omitted); *see* 18 U.S.C. § 2511. Courts evaluate these claims together because the elements are similar. *See Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 517 (C.D. Cal. 2021). To plead a CIPA wiretapping claim, a plaintiff must allege that "(1) by means of a machine, instrument, or contrivance, [the defendant] (2) willfully and without the consent of all parties (3) read, attempted to read, or to learn the contents or meaning of any communication, (4) while the communication was in transit (5) to or from any place in California." *Doe I v. Google LLC*, 741 F. Supp. 3d at 843 (citing Cal. Penal Code § 631(a)).

Plaintiff does not adequately plead her ECPA and CIPA claims. As a threshold matter, Plaintiff's CIPA claim is brought solely under Section 631(a)'s wiretapping provision and accordingly, both claims rise or fall on whether Plaintiff has adequately alleged the interception

of the "contents" of her communications while those communications were "in transit." First, the one-party consent exception applies and Hilton Domestic's valid consent bars Plaintiff's ECPA claim. Second, the Complaint lacks well-pleaded facts establishing that the "contents" of her communications—as defined under 18 U.S.C. § 2510(8)—were intercepted; or that any interception occurred while her communications were "in transit." Finally, Plaintiff made no attempt to plead a violation of CIPA based on aiding and abetting and so has waived any claim on that basis.[1]

### A. The "Tracking Entities'" Consent Defeats Plaintiff's ECPA Claim.

Plaintiff's ECPA claim fails because the one-party consent exception applies. ECPA provides that it is not unlawful for "a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). "[T]he consent of one party is a complete defense to a Wiretap Act claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). "Congress intended the consent requirement to be construed broadly." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *12 (C.D. Cal. Feb. 27, 2025).

Here, the Complaint's own allegations establish that Hilton Domestic consented to the Third Parties' receipt of user data. Plaintiff alleges that Hilton Domestic "knowingly embeds and deploys the Trackers on the Website and configures them to execute automatically within users' browsers upon page load and navigation." Compl. ¶ 10. Plaintiff further alleges that Hilton Domestic "deliberately embed[ded] and configur[ed]" each Tracker and that the Trackers "operate pursuant to Defendant's deliberate configuration." Compl. ¶¶ 10, 41, 49, 57, 65. These allegations confirm that Hilton Domestic—as a party to the communications between itself and Plaintiff—consented to the Third Parties' collection of data transmitted through the Website. It

[1] Furthermore, "[t]he Ninth Circuit has also explicitly rejected the concept of secondary liability under ECPA." *Nichols v. Peacehealth Networks on Demand LLC*, 2026 WL 607763, at *4 (W.D. Wash. Mar. 4, 2026) (citations omitted). To the extent Plaintiff's ECPA claim could be construed as sounding in aiding and abetting, it is foreclosed as a matter of law.

is well-established that a website operator's deliberate deployment of third-party tracking technologies constitutes consent to those third parties' receipt of user communications. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (dismissing claim because "Defendant's customers must have chosen to deploy Oracle's tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent.'"); *Doe I v. Google LLC*, 741 F. Supp. 3d at 842 (dismissing ECPA claim because "[t]he alleged interception . . . only occurs because the health care providers choose to install Google source code on their web properties" which "must mean the providers consented to the operation of Google source code").

**B. Plaintiff Fails to Plead Interception of "Contents" of Communications.**

To plead "contents" under both CIPA and the ECPA, a plaintiff must allege the interception of "the intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *Beltran v. Drs. Med. Ctr. of Modesto*, 2025 WL 1635467, at *10 (E.D. Cal. June 9, 2025) (Coggins, J.) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)); *see also* 18 U.S.C. § 2510(8). The critical distinction is between protected "content"—which reveals the substance of what was communicated—and unprotected metadata, routing information, or transactional data.

Plaintiff alleges that the Trackers intercepted "page URLs identifying what she was browsing, search terms, page titles and content categories associated with those URLs, and/or the referrer URLs reflecting prior navigation." Compl. ¶ 3. But the Complaint conflates two categories of data that courts have treated differently. On one hand, courts have recognized that "detailed URLs that reveal the specific document, product, or service that a user is viewing count as contents of communications." *Goldstein v. Rumble Inc.*, 2026 WL 1406766, at *5 (C.D. Cal. Apr. 24, 2026). On the other hand, basic site-level URLs—such as a homepage address or a domain-level path—constitute non-content routing information analogous to an IP address or a phone number. *See In re Zynga*, 750 F.3d at 1106; *see also* Compl. ¶ 32 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) and distinguishing between

detailed URLs that "could reveal the particular documents viewed" and basic "site-level URLs").

Here, Plaintiff's allegations straddle this line in a manner that undercuts her claims. Several of the data elements she identifies—"referrer URLs reflecting prior navigation," "content categories associated with those URLs," and "page titles"—are more akin to categorical metadata or navigational routing information than to the "substance, purport, or meaning" of any specific communication Plaintiff authored or directed to the Website. *Id.* ¶ 3. Plaintiff does not allege that she typed any search queries, entered any text into a form field, composed any messages, or otherwise generated any affirmative communicative content that was intercepted. Though Plaintiff alleges that she "navigated to" three URLs, that is not the same as alleging that Plaintiff actually searched for—i.e., communicated—any of these items. *Beltran*, 2025 WL 1635467, at *11 (dismissing CIPA claim because "[p]laintiffs' complaint d[id] not specify or describe the searches [p]laintiffs conducted on the Website."); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (Coggins, J.) (same when plaintiff failed to allege, *inter alia*, "what search terms she used"); *accord Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837 (E.D. Cal. 2025) (Coggins, J.) (finding "contents" adequately alleged when "[p]laintiffs detail[ed] ***the searches they conducted*** regarding their personal health conditions, treatment options, and doctors." (emphasis added)).

Without more, Plaintiff merely alleges that the "interception" consists of automated browser-to-server requests generated by standard HTTP protocol. *See* Compl. ¶¶ 7, 11 (alleging the "pixel causes the user's browser to transmit data to third-party servers" and that "the browser initiated each HTTP request to retrieve Website content"). A URL path generated automatically when a user clicks a hyperlink is not a "communication" with "content" in the traditional sense—it is the digital equivalent of a mailing address on an envelope. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) (dismissing CIPA claim because "opening a webpage" is "not a communication with content").

### C. Plaintiff Fails to Plead Interception "In Transit."

Even if the Court were to conclude that the alleged data constitutes "contents," Plaintiff's wiretapping claims independently fail because Plaintiff does not adequately allege that any

interception occurred while her communications were "in transit." "[T]o state a claim under CIPA, a plaintiff must allege that the defendant 'read or learned the contents of a communication while the communication was in transit, or in the process of being sent or received.'" *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (emphasis added) (internal citation omitted); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). This element requires plausible allegations that the communication was "acquired during transmission, not while it is in electronic storage." *Konop*, 302 F.3d at 878; *see also Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). "'While' is the key word here." *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023).

Plaintiff alleges that the Trackers "received and processed" the communications "in real time, during transmission, before the page request completed." Compl. ¶¶ 38, 46, 54, 62. Plaintiff further alleges that the tracking code "executed contemporaneously with each page load and navigation event" and that "embedded scripts automatically caused the interception and transmission . . . during the page-load process itself, before the requested page finished rendering." Compl. ¶ 11. As in *Valenzuela*—where the court held that allegations that merely "restate the pleading requirement of real time interception" are "just too conclusory to survive," 674 F. Supp. 3d at 758—these allegations fail to establish that the Trackers ever "read" or "attempted to read" Plaintiff's communications while they were in transit to Hilton Domestic. That Plaintiff's alleged communications were "transmitted" to the Trackers during the page-load process does not mean the Trackers actually read or attempted to read those communications as Plaintiff transmitted them. This pleading failure is fatal to Plaintiff's claims.

**D. Plaintiff Waived Any CIPA Aiding and Abetting Claim.**

The fourth clause of Section 631(a) imposes liability on any person who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Plaintiff's Complaint does not invoke the fourth clause, does not allege that Hilton Domestic "aided" or "agreed with" any third party to commit an unlawful wiretap, and does not plead any

facts supporting an aiding and abetting theory. *See* Compl. ¶¶ 73-77. The Complaint is entirely silent on this statutory provision. A plaintiff who fails to plead a theory in the operative complaint forfeits that theory; the Court's inquiry on a motion to dismiss is limited to the four corners of the complaint. *See Schneider v. California Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers.").

Plaintiff's failure to plead aiding and abetting constitutes waiver. This Court should not permit Plaintiff to assert an unpled theory of liability at any subsequent stage of this litigation.

## VI. PLAINTIFF'S INVASION OF PRIVACY CLAIMS FAIL.

Plaintiff fails to state intrusion upon seclusion or California Constitution invasion of privacy claims. Courts consider these claims together. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Courts first ask whether the complaint alleges the defendant "***intentionally intrude[d]***, physically or otherwise, upon the solitude or seclusion of another." *Shulman v. Group W Productions, Inc*., 955 P.2d 469, 490 (Cal. 1998) (emphasis added). Second, courts determine whether the invasion of privacy is "sufficiently serious in nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (emphasis added).

### A. Plaintiff's Allegations Preclude a Reasonable Expectation of Privacy.

As set forth above, *supra* Section IV.A, Plaintiff does not allege she provided any of her information (including personal information) on the Website or that Hilton Domestic collected any private information about her. Thus, there can be no violation. *Smith v. Cap. One Fin. Corp.*, 2012 WL 1669347, at *3 (N.D. Cal. May 11, 2012) ("[T]he plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source."). And, to the extent Plaintiff premises her claims based on any additional, subsequent visits to the Website, she lacked a reasonable expectation of privacy.

### B. The Disclosure of Plaintiff's Basic Information is Not Highly Offensive.

The information would not be "highly offensive" if intercepted. The Complaint alleges disclosure of Plaintiff's "page URLs identifying what she was browsing, search terms, page titles

and content categories associated with those URLs, and/or the referrer URLs reflecting prior navigation." Compl. ¶ 3. Disclosure of these elements, without more, is not "highly offensive."

As a threshold matter, Plaintiff's allegations boil down to the alleged disclosure of three URL addresses. *See* Compl. ¶ 2. She offers no factual allegations about any other information she allegedly provided—i.e., "content categories associated with [the viewed] URLs, and/or the referrer URLs" (*id.*)—or why it might be even minimally sensitive. *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) (dismissing claims because "while Plaintiffs generally allege that names, emails, phone numbers, addresses, social security numbers, browsing histories, and user locations were disclosed to Meta on Sharp's public website, they do not allege they provided this information"); *Dawidzik v. Tesla, Inc.*, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (disclosure of URLs not "highly offensive").

As to the three URLs Plaintiff lists in Paragraph 2 (then describes no further anywhere within the following 29 pages of her Complaint), Plaintiff similarly fails to allege how the disclosure of these URLs—which are URLs to publicly available web pages—could be "highly offensive" or "an egregious breach of social norms." The first URL simply reflects a search entered on the Website, while the other two merely link to two of the Website's publicly available articles. *See* Compl. ¶ 2. But merely alleging the disclosure of URLs and search terms does not rise to the level of highly offensive conduct. *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same for browsing history); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126 (S.D. Cal. 2023) (collecting cases holding "disclosure of a user's browsing history and personal information on a public website is 'routine commercial behavior' and not 'highly offensive'"). Indeed, "[e]ven disclosure of very personal information"—which is ***not*** present here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014).

Accordingly, Plaintiff's allegations fall woefully short of pleading Hilton Domestic

committed "highly offensive" conduct that constituted an "egregious breach of social norms."

### C. Plaintiff Fails to Allege Hilton Domestic Committed an Intentional Invasion of Privacy.

Regardless, the Complaint fails to adequately allege intentional conduct. "To establish that [Hilton Domestic] violated [Plaintiff's] right to privacy . . . [Plaintiff] must prove all of the following: . . . That [defendant] ***intentionally intruded***." Judicial Council of California Civil Jury Instruction (CACI) No. 1800; Intrusion into Private Affairs (2026 edition) (emphasis added). *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *4 (C.D. Cal. 2026) ("The intrusion must be intentional."). Plaintiff has not done so here.

The Complaint relies entirely on conclusory remarks and speculation in a failed attempt to plead intentional conduct. Plaintiff summarily claims that "Defendant intentionally deploys these technologies to accomplish its commercial objectives" (Compl. ¶ 4) and that "Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to the Trackers and permitted the Trackers to use that information for user profiling and targeted advertising." *Id.* ¶ 77. These allegations fall short of alleging that Hilton Domestic intended to intrude "physically or otherwise, upon the solitude or seclusion of another." *Shulman*, 955 P.2d at 490. Even accepting Plaintiff's allegations as true, Plaintiff offers no explanation for how installing third-party tools that can observe URLs a website visitor visited on a public website rises to the level of an ***intentional*** intrusion into individuals' private affairs. This argument fails.

## VII. PLAINTIFF'S FAILURE TO ALLEGE THE INADEQUACY OF A LEGAL REMEDY PRECLUDES HER EQUITABLE RELIEF CLAIMS.

Plaintiff's requests for equitable relief also fail under her UCL, invasion of privacy, and unjust enrichment claims because Plaintiff fails to allege she lacks an adequate remedy at law. "For a district court to have equitable jurisdiction, and thus entertain a request for equitable relief, the plaintiff must have no adequate legal remedy." *Thurner v. Walmart, Inc.*, 2026 WL 629768, at *2 (E.D. Cal. Mar. 6, 2026) (Drozd, J.); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022). "A plaintiff seeking equitable relief must 'establish that she lack[s] an adequate remedy at law[.]'" *Thurner*, 2026 WL 629768, at *2 (quoting *Sonner v. Premier Nutrition Corp.*,

971 F.3d 834, 844 (9th Cir. 2020)). Plaintiff has not done so here.

Equitable claims must be dismissed where: (1) "the operative complaint does not allege that [plaintiff] lacks an adequate legal remedy," or (2) the plaintiff alleges legal claims seeking monetary damages for the same amount as equitable restitution. *Sonner*, 971 F.3d at 844. Here, Plaintiff purports to seek equitable relief, specifically, an order declaring that Defendant's conduct violates various statutes, an order enjoining Hilton Domestic from continuing the alleged conduct, restitution, and disgorgement. Compl. ¶¶ 92, 112, Prayer ¶¶ 2, 3, 7, 10. Yet the Complaint is devoid of any allegations that Plaintiff lacks an adequate remedy at law. Instead, the Complaint alleges that legal remedies are available for the same alleged conduct—statutory damages under CIPA and the ECPA, and compensatory damages under the intrusion upon seclusion claim. *See* Compl. ¶¶ 78, 84, 105. "[S]ince Plaintiff[] ha[s] not pled that [she] lack[s] an adequate remedy at law, all [her] equitable claims, including those for restitution and prospective injunctive relief, fail." *Browning v. Am. Honda Motor Co., Inc.*, 549 F. Supp. 3d 996, 1014 (N.D. Cal. 2021).

## VIII. PLAINTIFF LACKS STATUTORY STANDING FOR HER UCL CLAIM.

Plaintiff lacks statutory standing to bring her UCL claim because she fails to adequately allege a loss of money or property.

"To satisfy the UCL's standing requirements, a plaintiff must (1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim." *King v. Conde Nast Pubs.*, 2012 WL 3186578, at *5 (C.D. Cal. Aug. 3, 2012) (internal quotation marks omitted).

Plaintiff makes the conclusory assertion that she "suffered injury in fact and lost money or property as a result of Defendant's conduct" and generally alleges that "[b]rowsing data . . . including browsing URLs of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising marketplace." Compl. ¶ 90. Critically, however, Plaintiff does not plead any specific factual allegations regarding an actual loss of money or property. Even if Plaintiff specifically alleged that her data has any value (which she does not), "just because

[Plaintiff's] data is valuable in the abstract, and because [Hilton Domestic] might have made money from it, does not mean that [Plaintiff] ha[s] 'lost money or property' as a result." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *10 (N.D. Cal. Apr. 21, 2026) (citation omitted); *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025) ("Plaintiffs . . . must allege something beyond the untethered insistence that they would not have bought the products had they known the truth of [d]efendants' data collection policies."). In any event, Plaintiff does not tie any of her alleged harm to Hilton Domestic aside from summarily alleging it occurred "as a result of Defendant's conduct" while she merely "navigated" to three Website pages. Compl. ¶¶ 2, 90. This conclusory allegation is not enough. *See Ng v. US Bank, NA*, 2016 WL 5390296, at *7 (N.D. Cal. Sept. 26, 2016) (dismissing UCL claim for lack of statutory standing when plaintiff only alleged injury occurred "[a]s a direct and proximate cause of the acts of the named [d]efendants.").

Accordingly, Plaintiff has not suffered cognizable harm and lacks statutory standing to bring her UCL claim.

## IX. PLAINTIFF FAILS TO PLEAD HILTON DOMESTIC UNJUSTLY RETAINED ANY BENEFIT SHE PROVIDED.

Generally, "there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, "[t]he Ninth Circuit has explained that '[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution.'" *Rabin v. Google LLC*, 2023 WL 4053804, at *12 (N.D. Cal. June 15, 2023) (quoting *Astiana*, 783 F.3d 753, 762 (9th Cir. 2015)). "To adequately allege unjust enrichment as a quasi-contract claim for restitution, 'a plaintiff must show that the defendant received and unjustly retained [a] benefit at the plaintiff's expense.'" *California Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1042 (N.D. Cal. 2024).

Plaintiff claims that Hilton Domestic "received a benefit by permitting [third parties] to deploy their tracking technologies on the Website" because Plaintiff's "browsing data constitutes personal property with recognized economic value in the digital advertising marketplace." Compl. ¶¶ 109-10. But Plaintiff's pleading deficiencies undercut these conclusory assertions.

Chiefly, Plaintiff offers no explanation about how the three URLs she allegedly visited constitute "personal property with recognized economic value." *Id.*

Further, the Complaint contends that "[i]n exchange for allowing these third parties to intercept and collect the URL contents of visitors' communications with the Website, Defendant received monetary compensation, data licensing benefits, promotional support, or other commercial value." Compl. ¶ 109. Plaintiff's attempt to premise her claim on a benefit that Hilton Domestic allegedly received from third parties (e.g., Treasure Data) also fails. *See Am. Video Duplicating, Inc. v. City Nat'l Bank*, 2020 WL 6882735, at *6 (C.D. Cal. Nov. 20, 2020) (dismissing claim "because [p]laintiff does not allege that [d]efendants received a benefit *from Plaintiff*"); *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) ("To allege unjust enrichment as an independent cause of action, a plaintiff must show that a defendant received and unjustly retained a benefit at the plaintiff's expense.").

Accordingly, unjust enrichment is not a standalone claim and Plaintiff fails to allege a benefit that Hilton Domestic obtained, requiring dismissal of her claim.

## X. CONCLUSION

For the foregoing reasons, Hilton Domestic respectfully requests that the Court dismiss Plaintiff's Complaint and each claim therein.

Dated: July 1, 2026

DLA PIPER LLP (US)

By: */s/ Isabelle Ord*
ISABELLE ORD
*Attorneys for Defendant*
HILTON DOMESTIC OPERATING COMPANY INC.